# 96 DTA 61

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV, AGUADILLA Y MAYAGUEZ

EL PUEBLO DE PUERTO RICO
Peticionario

v.

WILSON LOPEZ LEYRO
Recurrido

Núm. KLCE-96-00224

San Juan, Puerto Rico, a 16 de abril de 1996

Panel integrado por su Presidente, Juez Brau Ramírez
y los Jueces Delgado Hernández y Colón Birriel

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

San Juan, Puerto Rico, a 16 de abril de 1996

### I

El presente recurso de *certiorari*, acompañado de una *"Moción Urgente en Auxilio de Jurisdicción"* se presentó ante este Tribunal el 13 de marzo de 1996. El Procurador General en representación del peticionario, Pueblo de Puerto Rico (Pueblo), nos solicita que revisemos la resolución del Tribunal de

Primera Instancia, Sala Superior de Aguadilla, que declaró Ha Lugar la *"Moción Sobre Supresión de Evidencia"* presentada por el recurrido, Wilson López Leyro (López Leyro).

Atendida la *"Moción Urgente en Auxilio de Jurisdicción"*, mediante resolución de 14 de marzo de 1996, la declaramos Ha Lugar. Mediante la referida resolución le ordenamos además a López Leyro, mostrar causa por la cual no debía revocarse la resolución recurrida. Este compareció conforme a lo ordenado.

Con el beneficio de los escritos de ambas partes estamos en condición de resolver y así lo hacemos.

## II

Surge de los autos, ██ que allá en o para el 10 de abril de 1995, en horas de la noche, los agentes Frankie López Rivera (López Rivera) y el sargento Wilfredo López (sargento López), adscritos a la División de Drogas y Vicios del Cuartel de la Policía de Aguadilla, se encontraban dando una ronda preventiva en un vehículo. López Rivera iba como pasajero y el sargento López como conductor. Otros agentes de la policía participaban en igual capacidad en un segundo vehículo. A eso de las 8:30 p.m., el vehículo conducido por el sargento López llegó a la calle Marina, sector Hoyo de los Perros, de dicho pueblo. Pasaron en ese momento por un *"hospitalillo"* que ubica en dicho lugar, con el cual decidieron intervenir. Se trataba de una estructura abandonada, sin techar, que por el frente tiene cuatro (4) escalones, un balcón pequeño, orificios de puerta y ventana y por la parte trasera tiene otra estructura abandonada pequeña, de dos (2) plantas y una escalera. En dicho lugar no hay alumbrado eléctrico. La estructura aunque abandonada es propiedad privada.

Declaró López Rivera que éste le indicó al sargento López que detuviera el vehículo, quien así lo hizo, procediendo ambos a desmontarse del auto; que al dirigirse hacia el *"hospitalillo"* el sargento López iba al frente con una linterna, que al aproximarse a la estructura oyen una conversación, sin poder definir el contenido de la misma; que al subir a la referida estructura, el sargento López encendió la linterna pudiendo ver, de esta manera, a varias personas en su interior.

Entre las personas en el interior de la estructura, se encontraba un joven el cual López Rivera describió con lujo de detalles en su declaración jurada. Alegadamente, el joven, quien tenía en la mano un dinero y una caja de fósforos, procedió a hacerle entrega de una bolsa plástica transparente a una tal Mayra Ortiz, a quien López Rivera conocía con anterioridad. Acto seguido, López Rivera se identificó como policía y le indicó a las personas que allí se encontraban que estaban arrestadas. El joven descrito por López Rivera salió corriendo del lugar en unión a otro joven. En el lugar también se encontraba una tal Sandra Ivette, hermana de Mayra Ortiz. Declaró López Rivera, que ocupó la bolsa plástica transparente y recogió la caja de fósforos que el joven, descrito por él, había tirado al momento de echar a correr; que la caja de fósforo contenía en su interior siete (7) envolturas transparentes con polvo blanco de supuesta cocaína y una pastilla, y que la bolsa plástica también contenía polvo blanco de supuesta cocaína; que se dirigió en dirección hacia donde los dos jóvenes habían salido corriendo, lo que lo llevó a la calle Marina, donde encontró que otro agente había detenido al que le había entregado la bolsa a Mayra, y quien resultó ser López Leyro.

El contenido de las siete (7) bolsas transparente con cierre a presión que se encontraban en la caja de fósforos, al igual que el contenido de la otra bolsa transparente con cierre a presión, se sometieron a análisis químico, arrojando un resultado positivo de cocaína.

Posteriormente se procedió a radicar denuncias contra varias pesonas, incluyendo a López Leyro, quien fue denunciado por violación al Art. 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401. Celebrada la vista preliminar correspondiente, no se determinó causa probable para acusar contra éste. El Ministerio Público, al no estar conforme con la anterior decisión, solicitó vista preliminar en alzada, determinándose entonces, causa probable para acusar a López Leyro por el delito imputado.

Así las cosas, López Leyro presentó *"Moción Sobre Supresión de Evidencia"* ante el Tribunal de Primera Instancia, solicitando que la evidencia incautada, que pretendía ser ofrecida en su contra, fuera suprimida. Basó su moción, entre otras cosas, en: 1) *"que la intervención de los agentes del orden público fue una sin orden de registro y allanamiento";* y 2) *"que la evidencia obtenida en*

*contra del acusado adolece del defecto de no cumplir con los requisitos de la cadena de evidencia".* Celebrada la correspondiente vista de supresión de evidencia, el Tribunal concluyó mediante su resolución de 20 de febrero de 1996, suprimir la evidencia incautada por *"tratarse de un registro ilegal e irrazonable."*

De esa resolución, recurre ante nos el Pueblo alegando que erró el Tribunal de Primera Instancia, Sala Superior de Aguadilla, al haber suprimido la evidencia incautada al recurrido López Leyro.

La persona que solicita la supresión de la evidencia que ha de ser ofrecida en su contra, y alegue para ello violación a su protección constitucional contra registros y allanamientos: 1) ¿Necesita tener legitimación activa para hacer tal solicitud?; 2) ¿Existe en derecho o una expectativa razonable de intimidad o privacidad en una estructura abandonada?; 3) ¿se extiende la garantía constitucional, contra registros y allanamientos irrazonables a estructuras abandonadas? Estas son las interrogantes que debemos contestarnos en el presente recurso.

### III
La Carta de Derechos de la Constitución del E.L.A. de Puerto Rico, Art. II, sec. 10, en lo pertinente, dispone lo siguiente:

*"No se violará el derecho del pueblo a la protección de sus personas, cosas, papeles y efectos* **contra registros, incautaciones y allanamientos irrazonables.**

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente* **cuando exista causa probable** *apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*

*Evidencia obtenida en violación de esta sección* **será inadmisible en los tribunales.** " (Énfasis nuestro.)

Se ha interpretado por nuestro Tribunal Supremo que la citada disposición constitucional tiene *"como propósito proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura del juego entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión".* E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 1984); *Pueblo v. Martínez Torres,* 120 D.P.R. 496, 500 (1988); *Pueblo v. Ramos Santos,* 131 D.P.R. ___(1992), **92 J.T.S. 176**. Es decir, dicha disposición constitucional constituye una protección contra invasiones a la santidad del hogar y a la vida íntima *("privacy"). Pueblo v. Vargas,* 105 D.P.R. 335 (1976).

Como norma general un registro y allanamiento sin orden judicial, al igual que un arresto sin orden, se presume irrazonable e inválido, por lo que compete al Ministerio Público rebatir tal presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que permiten actuar sin orden. *Pueblo v. Lebrón,* 103 D.P.R. 420 (1979). *Pueblo v. Falú Martínez,* 116 D.P.R. 828 (1986); *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988). Esta norma general, sin embargo, tiene sus excepciones. Es decir, se ha permitido un registro sin orden cuando: (1) ha mediado un consentimiento válido, *Pueblo v. Acevedo Escobar,* 112 D.P.R. 770 (1982); *Pueblo v. Santiago Alicea,* ___ D.P.R. ___, (1995), **95 J.T.S. 45**; (2) el registro es incidental y contemporáneo a un arresto válido, *Pueblo v. Costoso Caballero,* 100 D.P.R. 147 (1971); *Pueblo v. Rosario Igartúa,* 130 D.P.R. ___ (1992), **92 J.T.S. 24**; *Pueblo v. Pacheco Báez,* 131 D.P.R. ___ (1992), **92 J.T.S. 69**; (3) existen circunstancias extraordinarias y se quiere evitar que desaparezca la evidencia, *Pueblo v. Nieves Vargas,* 101 D. P. R. 263 (1973); (4) se incauta evidencia abandonada o arrojada por una persona; *Pueblo v. Ortiz Martínez,* 116 D.P.R. 139 (1985); *Pueblo v. Ríos Colón,* 129 D.P.R. ___ (1991), **91 J.T.S. 66**; *Pueblo v. Ramos Santos,* 131 D.P.R. ___ (1992), **92 J.T.S. 176**; *Pueblo en interés de N.O.R.,* 138 D.P.R. ___ (1994), **94 J.T.S. 118**; (5) el registro se da en estructuras abandonadas; *Pueblo v. Erausquín,* 96 D.P.R. 1 (1968); *Pueblo v. Ramos Santos, supra;* (6) el registro se da en circunstancias en que el acto ilegal se realiza a plena vista, *Pueblo v. Dolce,* 105 D.P.R. 422 (1976); (7) el registro se lleva a cabo en sitios donde no quepa, dentro de las circunstancias del caso, una expectativa razonable de intimidad, (doctrina de campo abierto), *Pueblo v. Lebrón, supra;* (8) el

registro es de tipo inventario, *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986); *Pueblo v. Sánchez Molina,* 135 D.P.R. ___ (1993), **93 J.T.S. 140**; *Cooper v. California,* 386 U.S. 58 (1962); *Colorado v. Bertine,* 479 U.S. (1987); (9) el registro se da en el transcurso de una persecución, *("hot pursuit"), Pueblo v. Rivera Colón,* 129 D.P.R. ___ (1991), **91 J.T.S. 61.**

Por otro lado, un ciudadano que se considere agraviado o afectado por un allanamiento o registro ilegal podrá solicitar del tribunal correspondiente la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro. Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 234. En *Pueblo v. Ramos Santos, supra,* se estableció que al analizar una solicitud de supresión de evidencia hay que determinar:

*"(1) Si el acusado que la solicita **tiene capacidad para invocar la regla de exclusión,***

*(2) si, en ausencia de orden, le era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes, y*

*(3) la razonabilidad del registro."* (Enfasis nuestro).

En adición el imputado que solicita la supresión de la evidencia que ha de ser ofrecida en su contra y alegue violación a su protección constitucional contra registros y allanamientos irrazonables, tiene que tener legitimación activa para solicitar la Supresión, es decir, tiene que tener una expectativa legítima a la intimidad en relación con el lugar registrado. *Pueblo v. Ramos Santos, supra; Pueblo v. Vargas, supra* (1976); *Pueblo v. Lebrón, supra* (1979); *U.S. V. Salvucci,* 448 U.S. 83 (1980); *Rakas v. Illinois,* 439 U.S. 128 (1978). A estos efectos, se ha resuelto que una persona que se encuentra ilegalmente en un sitio no tiene legitimación activa para reclamar el derecho contra un registro irrazonable garantizado constitucionalmente, pues no tiene expectativa de intimidad alguna. Más aún, el peso de probar que estaba legalmente en dicho sitio le corresponde a dicha persona. *Pueblo v. Ramos Santos,* ___ D.P R ___ (1992), **92 J.T.S. 176,** a la pág. 10259; La Fave, *Search and Seizure a Treatise on the Fourth Amendment,* 2d. Ed., Vol. 4, sec. 11.3(b), West Pub. (1987).

Lo anterior es particularmente aplicable a circunstancias como las del caso ante nos, donde el sitio allanado es una estructura abandonada en la cual, como norma general, no aplica la garantía constitucional contra allanamientos y registros irrazonables. Véase y compárese *Pueblo v. Erausquín Martínez, supra,* a la pág. 4; *Catalán González y Co. v. García,* 104 D.P.R 380 (1975); *Pueblo v. Rosa Ramírez,* 137 D.P.R. ___ (1994), **94 J.T.S. 87.**

## IV

Según expresáramos anteriormente, la garantía constitucional contra registros y allanamientos ilegales, por excepción, no es de aplicación, entre otros, cuando se trata de registros de estructuras abandonadas, evidencia que es abandonada o arrojada por una persona, ni cuando el registro es uno incidental a un arresto legal.

A tenor con las normas expuestas, no cabe duda que el recurrido López Leyro no tenía legitimación activa para solicitar la supresión de la evidencia ocupada. Es decir, en el caso ante nos, López Leyro no demostró, ni ha demostrado ante este Tribunal, que estaba en posesión del inmueble con el permiso o autorización de los propietarios. Por tanto, éste no tenía legitimación activa *("standing")* para reclamar el derecho contra registros, incautaciones y allanamientos irrazonables garantizado constitucionalmente, pues no tenía expectativa de intimidad alguna.

En el caso de *Pueblo v. Rosa Ramírez, supra,* citado por el Tribunal de Instancia para sostener su dictamen ante los hechos similares a los de autos, se le extendió la garantía constitucional contra registros y allanamientos irrazonables a los ocupantes de una estructura a pesar de que la misma se encontraba abandonada. Ahora, dicho caso es distinguible del que nos ocupa. En aquella ocasión, nuestro Tribunal Supremo expresó que *"una persona que se encuentra ilegalmente en un sitio no tiene legitimación activa para reclamar el derecho contra un registro irrazonable garantizado constitucionalmente, pues **no tiene expectativa de intimidad alguna. El peso de probar que estaba legalmente en dicho sitio le corresponde al acusado".*** (Enfasis nuestro). En dicho caso el acusado, allí peticionario, logró demostrar mediante prueba, que no fue rebatida por el Estado, que éste estaba

autorizado por los propietarios del inmueble a pernoctar allí a la fecha de los hechos, cosa que, en el caso ante nos, López Leyro, como ya expresáramos, no demostró.

Por último, los agentes del orden público no necesitaban de causa probable para entrar a la estructura abandonada como expresara el Tribunal de Primera Instancia en una de sus conclusiones de derecho. Ello por tratarse aquí, como expusiéramos anteriormente, del allanamiento de una estructura abandonada. De igual forma, tampoco éstos necesitaban de motivos fundados para poder entrar a dicha estructura. Es decir, la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 11, en lo pertinente, sólo exige que el funcionario del orden público tenga motivos fundados para poder arrestar, o sea motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. Motivos fundados consiste en la posesión de aquella información y conocimiento que llevan a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito. *Pueblo v. Cabrera*, 92 D.P.R. 70 (1965). En el caso ante nos, una vez los agentes entraron a la propiedad, según surge de la totalidad de las circunstancias, éstos tuvieron los motivos fundados exigidos por la Regla 11, *supra*, para creer que López Leyro y los que allí se encontraban habían cometido un delito en su presencia, por lo que la intervención de los agentes con éstos y sus arrestos fueron legales. Por lo tanto y siendo ello así, la evidencia producto de dicho arresto y registro es admisible en evidencia.

Por los fundamentos expresados expedimos el auto y revocamos la resolución del Tribunal de Primera Instancia, Sala Superior de Aguadilla, que suprimió la evidencia incautada al recurrido López Leyro. Se ordena la devolución del caso a dicho tribunal para la continuación de los procedimientos consistente con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIO 96 DTA 61

**1.** Declaración jurada del agente Frankie López Rivera, Anejo IV del Apéndice de la Petición de *Certiorari* y Anejo IV de la réplica a *Certiorari* del recurrido.